# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**DANIEL HOWELL,**
        **Petitioner,**

**v.**                                         **Case No. 5:04cv234/RS/MD**

**JAMES R. MCDONOUGH,**[1]
        **Respondent.**

_____

## ORDER and
## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1). Respondent has filed a response (doc. 6) to which petitioner has replied (docs. 8, 9). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

---

[1] James R. McDonough succeeded James Crosby as Secretary of the Florida Department of Corrections and is automatically substituted as respondent. *See* Fed. R. Civ. P. 25(d)(1).

## BACKGROUND AND PROCEDURAL HISTORY[2]

At around 10:30 on the evening of August 28, 1998 Mr. Dennis Hatcher arrived at his home in a trailer park in Grand Ridge, Florida.  He noticed a white car parked in front of the home of a neighbor, Sherea King.  Ms. King was not at home at that time, although Mr. Hatcher did not know it.  There were two or three young men near the car.   Shortly thereafter Mr. Hatcher went out on his back porch and was approached by Mark Tyus (whom he did not know), one of the men he had seen in front of Ms. King's home.  Tyus, who was drinking from a bottle of vodka, engaged Mr. Hatcher in conversation.  Petitioner and his co-defendant, Jacob Frascona then came over, took the vodka and left.  Mr. Hatcher went back into his house, and did not see where any of the three men went (doc. 6, ex. B, pp. 57-61).[3]

The King home was unoccupied because earlier that same evening Amanda Dykes, who lived with Mrs. King, went to visit some friends who lived nearby.  She did not lock the house when she left because she did not have a key (ex. B, pp. 101-111).  At around 11:00 p.m. that evening Sherri Frascona, who lived next door to the King home, returned home after visiting some friends.  Twenty minutes or so later her brother-in-law, Jacob Frascona, petitioner's co-defendant, came to Sherri Frascona's home looking for his brother, Ms. Frascona's husband.  That person was not at home so Jacob Frascona left (ex. B, pp. 47-53).  Very soon after Jacob Frascona left, Amanda Dykes returned to the King home.  She was met by her sister, who also lived nearby, and who told her that the petitioner, Jacob Frascona and Mark Tyus had been inside her home, waiting for her.  When Ms. Dykes entered the home she discovered that several items were missing, including a microwave, a CD player, and some CDs (ex. B, pp. 101-111).  Shortly thereafter Ms. King arrived home

---

[2]  The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[3]  Hereafter all references to exhibits will be to doc. 6 unless otherwise noted.

from work.  One of the women called law enforcement.  While they were waiting for the police to arrive, petitioner drove up in a white car.  Jacob Frascona and possibly Mark Tyus were also in the car.  The women confronted the men, told them they thought that they had burglarized Ms. King's home, and that the police had been called.  Petitioner "spun out" and drove quickly away (ex. B, pp. 55-86).

Amanda Dykes and some of her friends got in a truck and followed.  They soon found the car in a ditch.  The keys were in the ignition so one of them opened the trunk.  There they found some of the items that were missing from Ms. King's home (ex. B, pp. 101-1141).  Law enforcement was directed to the car, and a tracking dog was employed.  After more than four hours of searching across a swamp and adjoining dirt roads and fields, the three men were found hiding and were arrested (ex. B, pp. 118-186).

Petitioner and Jacob Frascona were tried together and were both found guilty of burglary.  Petitioner was habitualized and sentenced to 30 years in prison.  Petitioner's direct appeal was unsuccessful, and he filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 raising the same grounds he raises here, along with others.  His motion was denied by the trial court, and the appellate court affirmed.  Petitioner also filed a motion to vacate an illegal sentence under Fla.R.Crim.P. 3.800, claiming, as he does here, that his sentence was unconstitutional.  The trial court denied relief, and the appellate court affirmed.  Petitioner now seeks federal habeas relief, raising five grounds, four based on alleged ineffective assistance of counsel and one based on an allegedly unconstitutional sentence.  Respondent concedes that the instant petition is timely (doc. 6, p. 6).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the

Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas

court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application

inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.  *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous

application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.  *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

PETITIONER'S GROUNDS FOR RELIEF

<u>Ineffective Assistance of Counsel</u>

Four of petitioner's five grounds for relief here are founded on claimed ineffective assistance of counsel.

### A.   Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

B.  **Federal Review of State Court Decision**

i.  <u>Ineffective assistance of counsel - failure to advise on right to testify.</u>

Petitioner first contends that he told his attorney that he wanted to testify.  He explained to his attorney that he would tell the jury that he was at his cousin's house the evening of the burglary and that Mark Tyus borrowed his car, with the implication that Tyus was the burglar; that the only reason he left hurriedly when told that law enforcement had been called was because there was an outstanding VOP warrant out against him; and that he had always pleaded guilty for his past convictions but he was contesting this charge because he was innocent.  He further asserts that his attorney told him that he "would not be testifying" because co-defendant Frascona would not be testifying (doc. 1, p. 31).

After the state rested petitioner was asked on the record whether he agreed that he did not want to testify.  He said he did not, but he now says that he agreed

only because his attorney instructed him to say so.  He was not told, he contends, that he had the right to testify, and that if he had been told he had that right, he would have insisted on testifying (*id.*).  Respondent concedes that this claim was properly exhausted in the state courts (doc. 6, p. 12).

It is axiomatic that a criminal defendant has the right to testify in his or her own defense.  *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987); *McGriff v. Dep't of Corrections,* 338 F.3d 1231, 1237 (11th Cir. 2003); *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992).  This right is fundamental and personal to the defendant, such that it may not be effectively waived by counsel against the defendant's will.  *Gallego,* 174 F.3d at 1197; *Teague*, 953 F.2d at 1532;  *Sexton v. French,* 163 F.3d 874, 885 (4th Cir. 1998); *cf. United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000) (finding that a strong-willed defendant who changed his mind about testifying likely did so as a result of persuasion rather than coercion), *cert. denied*, 531 U.S. 973, 121 S.Ct. 415, 148 L.Ed.2d 321, *and cert. granted, judgment vacated on other grounds sub nom., Randle v. United States*, 531 U.S. 1136, 121 S.Ct. 1072, 148 L.Ed.2d 950 (2001); *Emery v. Johnson*, 139 F.3d 191, 199 (5th Cir.1997) (same).  When "[u]naccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right . . . but simply discharges defense counsel's ethical responsibility to the accused." *Lema v. United States,* 987 F.2d 48, 52 (1st Cir. 1993).  An overwhelming majority of the circuits have held that a trial court generally has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily.  *See United States v. Van de Walker*, 141 F.3d 1451 (11th Cir. 1998); *United States v. Leggett*, 162 F.3d 237, 246 (3rd Cir. 1998)(citing cases from nine courts of appeals); *United States v. Richardson*, 195 F.3d 192, 197-198 (4th Cir. 1999).  Some courts have held that a waiver may be inferred from the defendant's conduct if she or he does not alert the trial court of a disagreement with counsel as to whether he should

testify.[4]  *Gonzalez v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000); *United States v. Webber*, 208 F.3d 545, 552 (6th Cir. 2000); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990); *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) ("if an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred.") (citation omitted).

The appropriate vehicle for a claim that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland*.  *Gallego*, 174 F.3d at 1197;  *Teague*, 953 F.2d at 1534; *Brown*, 217 F.3d at 258-59.  Although under the *Strickland* ineffective assistance standard "'the decision whether to put a Defendant on the stand is a "judgment call" which should not easily be condemned with the benefit of hindsight,' . . . it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002) (citation omitted). Counsel's performance is deemed deficient if "counsel refused to accept the defendant's decision to testify and would not call him to the stand . . . . Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant," defense counsel's performance would be deemed deficient.  *United States v. Camacho,* 40 F.3d 349, 355 (11th Cir. 1994) (quoting *Teague*, 953 F.2d at 1534), *overruled in part on other grounds by United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2001).

---

[4]  "[I]n exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected." *United States v. Pennycooke*, 65 F.3d 9, 12 (3rd Cir. 1995). The *Pennycooke* court's illustration of an "exceptional circumstance" was a defendant who repeatedly interrupted the trial to express his desire to testify and interjected that his attorney was lying when his attorney told the court that the attorney and the defendant had made a joint decision that the defendant would not testify. *Id.* at 12 (citing *Ortega v. O'Leary*, 843 F.2d 258 (7th  Cir.1988)).

A finding that counsel's performance was not deficient ends the inquiry. *Gallego, Camacho, Teague, supra.* However, even if counsel's performance was deficient, a defendant will not be entitled to relief if no prejudice inured. *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001); *Brown v. Artuz*, 124 F.3d 73, 80-81 (2nd Cir. 1997) (defendant had not established prejudice since the testimony he would have given would not have established a defense to the charges under state law); *Soto-Alvarez v. United States,* 62 F.3d 1411, 1995 WL 434799 (1st Cir. 1995) (unpublished opinion) (no prejudice since defendant's testimony would not have brought any new information to the jury's attention); *Nilsen v. Borg*, 41 F.3d 1513, 1994 WL 651941 (9th Cir. 1994) (unpublished opinion) (no prejudice since jury would likely have found defendant's testimony implausible).

"Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic." *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999). Such claims may be the subject of summary dismissal and do not always require a hearing. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991)(stating that a habeas petitioner "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement" to merit an evidentiary hearing, because producing less "is too facile a tactic to be allowed to succeed"); *Walker v. United States*, 238 F.3d 426, 2000 WL 1871681 (6th Cir. 1999) (unpublished opinion) (no hearing required);*United States v. Adams*, 198 F.3d 238, 1999 WL 812352, **1 (4th Cir.) (unpublished opinion) (claim was properly dismissed without a hearing).

In the instant case, the trial court did not hold an evidentiary hearing on this issue. Rather, it denied relief based on the record. After the state had rested its case at trial, the court asked counsel for the co-defendants if they had any evidence to present. They both stated that they did not. Then:

> MR. WELLS (co-defendant's counsel]: I need to put that on the record if we can because I previously talked to Mr. Frascona about this. Mr. Frascona, you agree that you do not want to testify?
>
> THE DEFENDANT: Yes, I do.

> **MR. PELL (petitioner's counsel]: Mr. Howell, do you agree that you do not want to testify?**
>
> **THE DEFENDANT: Yes, sir.**

**(Do. 6, ex. B, p. 220). Petitioner contends that this is insufficient to show that he was told he had the right to testify. All it shows, he argues, is that he said he didn't want to testify. The trial court disagreed, holding:**

> **The record clearly indicates that the Defendant was presented with the option to testify, and had the choice to testify if he wished. The Defendant could have said he wanted to testify but he simply chose not to. Accordingly, there was no cognizable deficiency in counsel's performance or prejudice to the Defendant in this respect.**

**(Ex. C, p. 28).**

**Petitioner has not presented this court with anything more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement. *Underwood, supra.* First, he says that he wanted to testify and told his attorney so (doc. 1, p. 30). This is a clear indication that he knew he could testify. He also says that his attorney told him that he would not be testifying, but nowhere does he say that his attorney told him that he did not have that right (doc. 1, p. 31). And when questioned during trial he freely stated that *he did not want to testify*. Given the context, petitioner's current argument - that his lawyer never told him that he had the right to testify - is totally baseless. Counsel would not have asked petitioner on the record if it was true that he did not want to testify if in fact petitioner did not have that right to begin with. The question by itself proves that petitioner knew he could testify. The answer proves that he waived that right. Consequently, there was no need for an evidentiary hearing in the state court, nor is there a need for one here.**

**Moreover, the judge who denied petitioner's motion for post-conviction relief was the same judge who presided at trial. He was therefore in a position to observe the petitioner when he told the court he did not want to testify, yet the judge made no remark, then or later, that gave even the barest hint that there was anything unusual about the exchange. The fact - which is true - that the record does not contain a positive statement that petitioner was told he had the right to testify is a**

red herring.

And even if petitioner were correct about his counsel's alleged deficiency, which this court does not find, he cannot show prejudice. He says he would have told the jury that he was at his cousin's house and that Mark Tyus borrowed his car. He would also have told the jury that he left in a hurry because there was a VOP warrant out against him, and that in previous cases he had always pleaded guilty, but this time he was fighting the charge because he was innocent (doc. 1, p. 30). This argument fails at several levels. First, his proposed testimony that he always pleaded guilty was inadmissible. Fla. Stat. § 90.410 provides that "an offer to plead guilty . . . to the crime charged *or any other crime* is inadmissible in any civil or criminal proceeding." The proposed evidence was also irrelevant. "Relevant evidence is evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401. The fact that petitioner pleaded guilty to earlier crimes proves only that he was guilty of those crimes. *Cf. Barnes v. State*, 462 So.2d 550 (Fla. 1st DCA 1985) (holding that the prosecutor's off-the-record admission to defense counsel that the state had a weak case was inadmissible because it did not tend to prove or disprove the guilt of the accused). What petitioner wanted to offer was more along the line of character evidence ("I was a bad guy before, but not this time."), which is generally inadmissible. Fla. Stat. § 90.609(2) ("Evidence of a truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence.").

Second, if petitioner was indeed at his cousin's house at the time of the crime it would have been a simple matter to establish that alibi by presenting the testimony of the cousin. The cousin did not testify, however, and nowhere does the record hint at an alibi defense. Both petitioner and Mr. Frascona, through counsel, pinned the crime on Mr. Tyus, and the clear evidence was that petitioner was present at the victim's home for quite a while during the time the burglary could have taken place. Third, while petitioner may have told the jury that he was at his cousin's home that evening, Mr. Hatcher positively identified petitioner in open court as one of the men

ha saw in front of Ms. King's home.

Finally, petitioner's explanation as to why he left in a hurry when he heard the police were coming would not likely have been believed by any juror given the other, albeit mostly circumstantial, evidence against the petitioner.  Petitioner's claim that he did not know that he could testify, or that his lack of that knowledge prejudiced him, is groundless.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

      ii.  <u>Ineffective assistance of counsel - failure to request separate trial.</u>

As his second ground for relief petitioner argues that because he was not indicted jointly with Jacob Frascona, and because the court did not consolidate the indictments, he could not legally be tried jointly with Frascona, and his attorney's performance in failing to move to sever was deficient and prejudicial.  The respondent concedes that this claim was properly exhausted in the state courts (doc. 6, p. 16).

Petitioner's claim is grounded on ineffective assistance of counsel, but for counsel's performance to have been defective, petitioner must show counsel was deficient in failing to move for severance.  It is well settled that where co-defendant A confesses to a third party, such as a law enforcement officer, and implicates co-defendant B, the confession, recited by the third party, cannot be used in a joint trial because it violates co-defendant B's right to confront the witness against him.  An instruction to the jury is not enough to cure the violation, and separate trials must be granted.  *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).  It is equally well settled that the right to separate trials does not extend to co-defendants merely because their defenses are antagonistic.  *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993) ("[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").

The Rule 3.850 court held an evidentiary hearing on this issue and after hearing the evidence presented, including the testimony of petitioner and both defense counsel, concluded that there was neither deficient performance nor prejudice.  The court credited counsel's testimony that petitioner did not want separate trials because he did not want Frascona to testify against him.  Rather, counsel felt, and the court believed, that being tried jointly with Frascona was a positive, because it would allow both petitioner and Frascona to point the finger of guilt at Tyus (who was not tried with them, and who did not testify), which is what they did.  Thus, the court concluded that the decision not to move for severance was reasonable trial strategy, and that there was no deficient performance (ex. C, p. 55).

Furthermore, if a motion to sever had been filed, petitioner cannot show that it would have been granted.  As the trial court held, petitioner and Frascona did not have antagonistic defenses, and the joint trial cannot fairly be said to have been manifestly unfair or prejudicial.  Consequently, the trial court's finding that there was no deficient performance on counsel's part, nor any prejudice, did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

iii.   <u>Ineffective assistance of counsel - failure to move for mistrial.</u>

Petitioner next argues that his attorney's performance was deficient in failing to move for a mistrial when Frascona's attorney inferred that petitioner was guilty. Respondent says that this claim was not properly exhausted in the state court, and is therefore procedurally defaulted from review in this court.  Respondent is correct.

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct'

---

[5]  Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).

---

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction
> of an innocent person is extremely rare.  To be credible, such a claim

> requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Petitioner here first raised a claim based on counsel's failure to move for a mistrial in a "supplement" set out in his reply to the state's response to his motion for post-conviction relief (ex. D, p. 46). Respondent contends that the supplement was untimely because it was filed more than two years after petitioner's conviction and sentence. However, the limitation on filing for post-conviction relief is two years from the date the conviction becomes final, which is when the mandate on appeal is issued. Fla. R. Crim. P. 3.850(b). Since the mandate on appeal issued on June 9, 2000, and since the supplemental claim was filed on October 4, 2001, it does not appear to be untimely. Nevertheless, respondent contends that the claim was defaulted because the trial court did not address it, but offers no authority that such a claim is defaulted merely because it was included in a reply brief rather than in the initial motion for post-conviction relief. To the contrary, the court in *McConn v. State*, 708 So.2d 308 (Fla. 2nd DCA 1998) (en banc) held that the trial court should consider granting a motion to supplement if the time for raising a claim had not expired, and the defendant showed cause for not raising it earlier. Still, petitioner did not seek leave of court to supplement his motion, nor did the court grant such leave. The Rule 3.850 court ignored the late-filed claim and did not address it. It is arguable that the claim is procedurally defaulted. If it was, petitioner has not shown sufficient legal cause to excuse his default, and although he claims innocence, he has not presented the type of independent evidence of innocence required by *Schlup, supra.* Therefore, this court should not consider it.

If this court were to consider it, the claim would be found to be meritless. During final argument Frascona's counsel told the jury:

> So you say, "Well, about the stuff in the car? He was a passenger in the car." Well yeah, but it wasn't his car and he's not shown to have had a set of keys to it. And he obviously didn't have access to the trunk

**because the testimony from the witness stand was when the car was abandoned the person who went, who opened the trunk, had to go get the keys out to go open the trunk to see what was in there. There's absolutely nothing that ties Jacob Frascona to the burglary. There's absolutely nothing that shows he committed the burglary. There's nothing that shows he stole anything. There's nothing to show that he was ever in possession of any of the CDS, microwave oven, VCR or anything.**

(Ex. B, pp. 243-44).  Petitioner says this inferred guilt on him.  If it did, the inference was marginal at worst.  Mr. Frascona's counsel simply stated that the state had failed to put on any evidence that Frascona was guilty, an argument the jury did not accept.  Regardless, there was absolutely nothing objectionable about anything in the statement quoted above.  Petitioner relies on a Florida case, *Nixon v. Singletary*, 758 So.2d 618 (Fla. 2000), *rev'd on other grounds sub nom. Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 511, 160 L.Ed.2d 563 (2004), in which defense counsel conceded his own client's guilt in the guilt phase of a death penalty case.  Nothing remotely similar to that happened here.  Petitioner has not advanced any federal constitutional authority for his claim.  He is not entitled to federal habeas relief, and the writ should not issue.

        iv.      <u>Ineffective assistance of counsel - failure to move to suppress.</u>

        For his fourth ground for relief petitioner faults his attorney for not moving to suppress evidence.  He reasons that because non-law enforcement persons opened the car trunk, and because law enforcement did not seize the stolen property until two hours later, the evidence was somehow tainted and should have been suppressed.  Respondent concedes that this issue was properly exhausted in the state courts.

        The Rule 3.850 court heard evidence on this issue and agreed with defense counsel that there was no legal or factual basis for filing a motion to suppress (ex. Pp. 55-56).  Petitioner has suggested no basis for suppression of the evidence other than that it was unreliable, an argument that goes to the weight of the evidence, not its admissibility.  He does not point to any Florida law, much less any federal law,

that would support this claim.  Suppression of evidence under the Fourth Amendment involves the exclusion of evidence illegally seized by law enforcement, *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 3451, 58 L.Ed. 652 (1914) (exclusionary rule applied to federal prosecutions where federal officers make illegal search and seizure), *overruled in part on other grounds by Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), *and in part on other grounds by Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Mapp v. Ohio*, *supra* (same as to state prosecutions under the Fourteenth Amendment).  The evidence petitioner wanted suppressed was not illegally seized by law enforcement, and he has not suggested, nor could he show,  that the person who opened the trunk of petitioner's car was acting as a law enforcement official or at the direction of law enforcement. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) (exclusionary rule does not apply to private, non-law enforcement searches and seizures).  There was no factual or legal basis to support a motion to suppress, as the state court held.  Consequently, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254 (d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

<u>Unconstitutional sentence.</u>

Finally, petitioner contends that he was illegally sentenced.  He argues that he was offered a plea deal before trial, with the condition that if he did not accept the deal, the state would move to habitualize him if he was convicted.  He did go to trial, he was convicted, and he was habitualized.  This, he says, punished him for exercising his Sixth Amendment right to a trial by jury.  Respondent says that this issue was not fairly presented to the state courts as a federal claim, but petitioner's filings show that he argued federal law in his appeal (doc. 9).  The appellate court made no specific finding on this issue, but affirmed petitioner's sentence. Regardless, the claim is meritless.

A.   Clearly Established Federal Law

In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) the Supreme Court addressed this issue directly. There the defendant was offered a plea deal in which he would not be habitualized, with the clear understanding that if he went to trial and was convicted, habitualization, and a resulting life sentence, would follow. The Court held that while "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights,'" it is a legitimate and permissible attribute of the plea bargaining process. 434 U.S. at 364, 98 S.Ct. at 668 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973)). The Court reasoned that the plea bargaining process benefits both sides - if the defendant pleads the state is guaranteed a conviction, albeit with a possible lesser offense and lesser penalty, and the defendant is guaranteed no greater penalty than that offered. Conversely, if a defendant rejects the plea, he has a chance at acquittal, but with the possibility of a greater sentence if he is not acquitted. Such a process imposes difficult choices, but is not unconstitutional. Similarly, in *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) the Court addressed New Jersey's sentencing scheme for murder cases, which provided that if an accused was found guilty of first degree murder by a jury, the mandatory sentence was life. However, if the accused pleaded *non vult contendere* (no contest), he *could* be sentenced as if guilty of second degree murder, or to a maximum of thirty years, but with the court still having the authority to impose a life sentence if the crime merited that degree of punishment. Corbitt argued that this punished him for exercising his right to a jury trial. The Court disagreed, holding that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." 430 U.S. at 218, 99 S.Ct. at 497. Indeed, the Court noted that a state may encourage a guilty plea by offering substantial benefits in return for a plea, just as in *Bordenkercher, supra.*

The Eleventh Circuit has followed *Bordenkircher.* In *Hitchcock v. Wainwright*, 770 F.2d 1514 (11th Cir. 1985) the court held that there was no interference with the

right to a jury trial and no vindictiveness where a life sentence was offered in return for a guilty plea but a death sentence was imposed after conviction based on a jury finding of guilt.  "In the 'give-and-take' of plea bargaining, the state may extend leniency to a defendant who pleads guilty, foregoing his right to a jury trial, . . . [because] the heart of a plea bargain, from a defendant's point of view, is the option of avoiding a possibly harsher sentence after conviction at trial," *Id.* at 1518-19, *rev'd on other grounds sub nom. Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).  Similarly, in *United States v. Astling*, 733 F.2d 1446 (11ᵗʰ Cir. 1984) the court held that the prosecutor's actions in informing a defendant that if he rejected a plea offer additional charges would be brought, constituted neither vindictiveness nor any interference with the right to a jury trial.  And as the Supreme Court more recently noted, "[t]he plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights . . . ."  *United States v. Mezzanatto*, 513 U.S. 196, 209-210, 115 S.Ct. 797, 805-806, 130 L.Ed.2d 697 (1995).

B.  Federal Review of State Court Decision

Petitioner's claim is without merit based on *Bordenkircher, Chaffin* and *Corbitt, supra*.  Petitioner cited *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) in support of his claim, but that case is not on point.  Under the then Federal Kidnapping Statute,18 U.S.C. § 1201(a), a person who kidnapped another, who was not released unharmed, could be put to death if tried by a jury, but not if he pleaded guilty or was tried by a judge.  The *Jackson* Court reasoned that the statutory scheme was unconstitutional because it forced a person who wanted a jury trial to expose himself to a possible death penalty, and that if the jury so found, the death penalty was mandatory.  While that situation has similarities to the instant case, *Jackson* was decided before *Bordenkircher*, *Chaffin* and *Corbitt*, which control in the context of plea bargaining.  Moreover, the *Corbett* court specifically distinguished *Jackson* based on its holding that the death penalty, which is "unique in its severity and irrevocability" was not involved in Corbitt's case, and that the

ultimate sentence was discretionary, not mandatory.  439 U.S. at 217, 99 S.Ct. at 496.
Thus, petitioner's claim that he was punished for exercising his right to a jury trial
must fail.   The case is on point with *Bordenkircher*, and is controlled by it.
Consequently, the state court's ruling did not result "in a decision that was contrary
to, or involved an unreasonable application of, clearly established Federal law," 28
U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas
relief, and the writ should not issue.

> Accordingly, it is ORDERED:

> The clerk shall change the docket to reflect that James R. McDonough has
been substituted as respondent in this cause.

> And it is respectfully RECOMMENDED:

> That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1),
challenging the conviction and sentence in *State of Florida v. Daniel J. Howell* in the
Circuit Court of Jackson County, Florida, case nos. 98-684 and 98-695, be DENIED,
and that the clerk be directed to close the file.

> At Pensacola, Florida, this 7th day of November, 2006.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed
within ten days after being served a copy hereof.  <u>Any different deadline that may
appear on the electronic docket is for the court's internal use only, and does not
control.</u>  A copy of any objections shall be served upon any other parties.  Failure to
object may limit the scope of appellate review of factual findings.  See 28 U.S.C. §
636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988). findings.  See 28

**U.S.C. § 636; *United States v. Roberts*, 858 F.2d 701 (11th Cir. 1988).**